UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA A. R., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-CV-110-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the decision of the Commissioner and **remands** the case for further proceedings consistent with this Opinion and Order.

I.    **Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id.* § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). The court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.     Procedural History

The plaintiff protectively filed an application for supplemental social security disability benefits on October 25, 2019. (R. 15, 210-13). The plaintiff alleged that she became disabled on April 6, 2019, due to depression, anxiety, high blood pressure, back damage and pain, sciatica nerve damage, left foot fallen arch, and memory and vision problems. (R. 227). She was 51 years old on the alleged onset date. (R. 223). Before her alleged disability, the plaintiff worked as a restaurant busser. (R. 228). The plaintiff testified that she was on her feet and had to lift between ten to thirty pounds as a busser.

(R. 46). She resigned from this job due to pain from lifting and depression. (R. 47). The plaintiff has a high school diploma. (R. 44). The plaintiff testified that she attended special education classes for mathematics but otherwise attended regular classes. (R. 45).

The Commissioner denied the plaintiff's application on initial review and on reconsideration. (R. 136-38, 143-47). The plaintiff then requested a hearing before an Administrative Law Judge (ALJ). An ALJ held a hearing by telephone on July 20, 2021. (R. 37). Testimony was given by the plaintiff and a vocational expert (VE). (*See* R. 37-66).

At the hearing, the plaintiff testified that she was 5'7" and weighed 263 pounds. (R. 43). The plaintiff stated that she has pain in her back, legs, feet, and knees. (R. 49). She also has trouble with balance and walking because of swelling in her legs and feet and numbness in her toes. (R. 58, 59). She bought a cane after her doctor told her to get one, but it was not prescribed. (R. 52-53). She testified that she uses her cane as needed. *Id*. She does not use her cane to walk around inside of her home but does use it outside. (R. 53, 58). She also uses her cane to get out of chairs if she sits too long. (R. 50, 58). Her pain is worsened by sitting or standing for long periods of time and walking too far without her cane. (R. 50).

The plaintiff testified that she can sit for approximately 15 minutes, stand for 15 minutes, and walk for 10 minutes. (R. 50-51). She testified that she drives, but she has trouble seeing at night and occasionally struggles to press the brake pedal. (R. 44). She can get dressed and bathe herself, but she uses a shower chair. (R. 53). She can wash dishes and clothes, but she must take a lot of breaks. (R. 54). She usually microwaves food but can cook from scratch. (R. 54). She can crochet, shop, pay bills, and read the newspaper.

3

(R. 55-56). She attends church weekly and goes out to eat with her father up to twice per week. (R. 56).

On August 31, 2021, the ALJ issued a decision denying disability benefits. (R. 31). On February 10, 2022, the Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-3). Following the Appeals Council's denial, the plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's August 31, 2021 decision under 42 U.S.C. § 405(g).

## III.   The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima

facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

Here, the ALJ determined at step one that the plaintiff had not engaged in substantial gainful activity since October 25, 2019, her application date. (R. 18). At step two, the ALJ found that the plaintiff has severe impairments of hypertension, obesity, depression, generalized anxiety disorder, lumbar degenerative disc disease, and plantar calcaneal spur. *Id*. The ALJ found that plaintiff's cataract is non-severe. *Id*. The ALJ also stated that the plaintiff's left foot arch damage, fallen arches, memory problems, and nighttime vision loss are potential symptoms of other impairments but are not medically determinable impairments themselves. *Id*.

At step three, the ALJ found the plaintiff's impairments do not meet or medically equal a Listing. *Id*. Specifically, the ALJ considered Listing 1.15, Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root(s). (R. 19). The ALJ explained that the plaintiff's impairment or combination of impairments does not meet the criteria of Listing 1.15, because the Listing requires a finding in imaging consistent with compromise of nerve root(s) in the cervical and lumbosacral spine (along with other requirements), whereas the plaintiff's x-rays showed "a normal lumbar spine with no evidence of fracture or dislocation" and "vertebral bodies and disc spaces appeared normal." (R. 19-20).

The ALJ also considered plaintiff's mental impairments under Listings 12.04 and 12.06, but found that "the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the [listing] criteria[.]" (R. 20). The ALJ

found the plaintiff has a moderate limitation in each of the paragraph B domains—understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 21); *see* 20 C.F.R. § 404 Subpt. P App'x 1.[1] Because the plaintiff does not have at least one extreme or two or more marked limitations, the ALJ determined that the plaintiff does not satisfy the paragraph B criteria. (R. 22).

Although not a Listing, the ALJ considered the plaintiff's obesity under Social Security Ruling (SSR) 19-2p. The ALJ found that the plaintiff is obese due to her "consistently high body weight or body mass index (BMI)." (R. 20). The ALJ recognized that a February 29, 2020, examination by James Crutcher, M.D. revealed that plaintiff's obesity affected her gait and balance. *Id*. However, the ALJ determined that the plaintiff's symptoms "were of insufficient severity as to equal a listing because the [plaintiff] could still ambulate and could even walk on her toes and heels if given support[.]" *Id*.

At step four, the ALJ determined that the plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 416.967(b), except as follows:

> The [plaintiff] should perform no climbing of ropes, ladders, or scaffolds; crouching or crawling. She is able occasionally to climb ramps and stairs; stoop, kneel, and balance on uneven, moving, or narrow surfaces. The [plaintiff] is able to understand, remember, and carry out simple tasks with simple instructions in a routine work setting, meaning she is capable of work

---

[1] When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The "paragraph B" criteria represent the areas of mental functioning a person uses in a work setting. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, §12.00 (C).

>that is [Specific Vocational Preparation (SVP) Level] 1 to 2. The [plaintiff] is able occasionally to interact with coworkers and supervisors, however, she should have no interaction with the general public, but contact is ok. The [plaintiff] is not capable of tandem or teamwork. She can have occasional changes in the work process.

(R. 22). In making this finding, the ALJ addressed the plaintiff's hearing testimony as well as medical opinions, objective medical evidence, and prior administrative medical findings in the record. (*See* R. 23-29).

Citing the VE's testimony as to a hypothetical person with the plaintiff's RFC, the ALJ found that the plaintiff is unable to perform her past relevant work. (R. 29). The ALJ also found that the plaintiff is an individual closely approaching advanced age with a high-school diploma and no transferable job skills. (R. 30). Accordingly, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical person with the plaintiff's age, education, work experience, and RFC, the ALJ found that the plaintiff can perform the requirements of representative occupations, including:

>*Small Products Assembler*, light exertion, specific vocational preparation (SVP) level 2, Dictionary of Occupational Titles (DOT) # 706.684-022, with 190,000 jobs existing in the national economy;
>
>*Packer/Inspector*, light exertion, SVP level 2, DOT # 559.687-074, with 160,000 jobs existing in the national economy; and
>
>*Electronics Assembler*, light exertion, SVP level 2, DOT # 729.687-010, with 280,000 jobs existing in the national economy.

(R. 30). Accordingly, the ALJ concluded at step five that the plaintiff is not disabled. (R. 31).

## IV. Discussion

The plaintiff argues that the ALJ's RFC and step-five determinations failed to properly address significantly probative medical evidence. She contends that her combination of impairments—including her obesity, reflected in a BMI over 40, high blood pressure with bilateral edema, and "clear instability and balance issues"—preclude her from performing any job requiring her to stand at all, much less for up to six hours in a workday, as is required for light-exertion work. She also argues that the ALJ's decision failed to account for her need to use a cane, and its consequent limitations on her ability to perform tasks involving standing, walking, and using her upper extremities. The Commissioner argues that the ALJ properly considered the medical and other evidence in the record and substantial evidence supports the ALJ's decision.[2]

Although an ALJ is not required to discuss every piece of evidence, she must consider the entire record and "must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Mays v. Colvin*, 739

---

[2] The Commissioner's brief includes a general citation to case law indicating that inadequately presented arguments are waived. (*See* Doc. 11 at 2 (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)). Although portions of the plaintiff's argument are poorly organized and sparse in citation to the well-established legal requirements that apply, the plaintiff's brief clearly sets forth an argument that the ALJ failed to adequately account for probative evidence regarding back pain, leg pain and numbness, and issues affecting her stability and safety when walking. (*See* Doc. 10 at 5-6). The plaintiff's brief argues that the evidence supports a sedentary RFC (and the plaintiff's attorney also forecast this argument during the ALJ hearing on July 20, 2021). (*See* R. 43). The Court finds the plaintiff has adequately raised the issues addressed herein.

F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

As set forth in the ALJ's decision,

> [the plaintiff] said sitting too long or walking too long made her pain worse. She estimated she could sit for 15 minutes. The [plaintiff] said she could stand for about 15 minutes. As for walking, she reported she could walk about 10 minutes. She said a doctor told her to use a cane as needed; she said it was not prescribed, however. The claimant said if she sits too long, she uses her cane to get up. The [plaintiff] said she had trouble picking up things she drops because it hurts to bend. She reported that she has trouble standing long enough to cook a full meal and usually relied on microwave food or sandwiches. She did say she was able to wash dishes and wash clothes part of the time, but she takes a lot of break. The [plaintiff] said that if she stands or sits too long her feet swell and she is unable to walk at all; she said she is usually in her recliner with her feet elevated.

(R. 23).

The ALJ found some of the plaintiff's testimony was not fully consistent with medical records. The ALJ noted, for example, the plaintiff was seen by Dr. Crutcher on February 29, 2020, for physical evaluation. (R. 23, 349). The ALJ summarized Dr. Crutcher's observations and findings as follows:

> The [plaintiff] complained of left foot pain and back pain since 2010. She rated her pain as a 5 out of 10 in intensity. The [plaintiff] said her great toes and second toes were numb for hours and there was associated pain. She estimated her pain limited her to walking about 20 yards, after which her toes would go numb for an hour. She said she could sit for 30 minutes, stand for 30 minutes, and lift a bag of sugar of 5 pounds.

(R. 24) (internal citation omitted).

The ALJ acknowledged Dr. Crutcher's observations that 1) the plaintiff's gait appeared to "be quite heavy and ponderous, with the [plaintiff] taking short steps with some

swaying issues," and 2) the plaintiff appeared to be unstable and somewhat off-balance because of her weight. *Id*. However, the ALJ noted:

> Dr. Crutcher found no cyanosis or clubbing in the [plaintiff's] extremities, but there was bilateral edema of the lower extremities and large fat pads over the posterior tibial area of her ankle. She had good posterior dorsalis pedis bilateral, but no posterior tibialis was appreciated. Further, all of her joints moved fully and completely except for limitations due to body size. Her straight leg raise tests were positive at 45 degrees with her right leg and 60 degrees with her left leg. Sensation was said to be impaired over her great toes bilaterally, but this was described as feeling "dull to light touch." . . . Examination showed she could walk on her toes and heels if she was given proper support; without support she did stagger. She could not heel-to-toe walk without maintaining some support.
>
> \*   \*   \*
>
> Dr. Crutcher's impression was the claimant had some back pain with a positive leg raising test, with some instability issues obvious with her gait that affected her speed, stability, and safety. Still, she had normal, pain free range of motion in her spine.

*Id*. (internal citations omitted).

The ALJ cited Dr. Crutcher's report in support of the RFC determination for a reduced range of light work. The ALJ stated that "the medical records are not consistent with further exertional level limitation because her consultative exam in 2020 showed she could toe walk if given support and she had no joint dysfunction." (R. 27).

The Commissioner contends that the ALJ reasonably fulfilled her duty to consider the medical and other evidence in assessing the plaintiff's RFC. (*See* Doc. 11 at 7-8). In explaining the RFC determination, the ALJ also noted that an x-ray of the plaintiff's spine from February 13, 2020, revealed a normal lumbar spine with no evidence of degenerative disc disease. *Id*. The ALJ also discussed imaging from July 2020 showing that the plaintiff

10

had soft tissue swelling in her left ankle and a plantar calcaneal spur consistent with degenerative joint disease. (R. 25, 28). However, an x-ray of the plaintiff's left foot on the same day "showed no soft tissue abnormality and no significant radiographic evidence of arthritis (Exhibit D8F, page 6)." (R. 28, 370).

The Commissioner cites the ALJ's findings that although the plaintiff used a cane "as needed," the July 2020 x-ray of the plaintiff's left foot were normal with no evidence of arthritis or tissue abnormality. (Doc. 11 at 7). The Commissioner also noted the ALJ's reliance on the February 2020 x-ray showing no abnormalities in the plaintiff's spine and Dr. Crutcher's finding that the plaintiff has "good grip" with "no evidence of joint dysfunction." (R. 350). The Commissioner also emphasizes that the ALJ's decision is supported by the opinions of state agency physicians Dr. Scott Newton and Dr. William Oehlert. (R. 36-27). Both physicians reviewed Dr. Crutcher's report and other medical evidence and opined that the plaintiff's abilities were consistent with a reduced range of light work. (R. 69-84, 87-104).

The Commissioner contends that altogether, this evidence constitutes "more than a mere scintilla" of evidence sufficient to support the ALJ's RFC finding. *See Biestek*, 139 S. Ct. at 1154 (quoting 42 U.S.C. § 405(g)). (Doc. 11 at 8). However, an ALJ is also required to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved" and to explain why she did not adopt a medical opinion that conflicts with the RFC assessment. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. Moreover, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other

evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); s*ee also Farris v. Berryhill*, CIV-17-255-BMJ, 2018 WL 387807, at *2 (W.D. Okla. Jan. 11, 2018) (explaining that "[p]icking and choosing from the record is an impermissible practice and one necessitating remand").

Here, the standing and walking requirements of the ALJ's RFC determination are plainly inconsistent with Dr. Crutcher's observations. As the ALJ's decision acknowledged, Dr. Crutcher's examination "showed [the plaintiff] could walk on her toes and her heels if she was given proper support"; however, "without support she did stagger." (R. 24). Although the ALJ cited Dr. Crutcher's finding that the plaintiff "could toe walk if given support and . . . had no joint dysfunction," the ALJ did not attempt to reconcile the RFC determination with Dr. Crutcher's finding that the plaintiff "appeared unstable and was somewhat off balance because of her corpus that raised some marginal stability issues with concern for her safety." (R. 24). Although the ALJ stated that "other postural limitations" in the RFC would accommodate the plaintiff's "difficulty with gait that affected stability and safety," (R. 24), the RFC for light work would still require "a good deal of walking or standing"—up to approximately six hours of an 8-hour workday. *See* 20 CFR § 416.967(b); SSR 83-10, 1983 WL 31251, at *6. The ALJ's decision did not explain how the plaintiff could safely perform the standing and walking required of light work on a consistent basis or "occasional" climbing of ramps and stairs; stooping, kneeling, and balancing on uneven, moving, or narrow surfaces. (*See gen*. R. 22-29).

Although the state agency reviewing physicians did opine that the plaintiff can perform a restricted range of light work, the record includes later evidence that was not

considered by the reviewing physicians. First, as noted *supra*, the plaintiff testified to pain and other problems limiting her from standing or walking for long. As the ALJ acknowledged when addressing the plaintiff at the hearing,

> [o]n appeal, you said your conditions had gotten worse, and you had shoulder issues. You'd had a near breakdown due to denial of your claim. On your next appeal, you said you were getting worse, you had a hard time getting up and down, your back hurt, your foot hurt, you couldn't feel your toes in your left foot, you were falling, you were using a walker 'cause you were afraid.

(R. 49).

In addition, the plaintiff presented post-hearing evidence from Coffeyville Chiropractic. On July 23, 2021, the plaintiff complained of pain in her left shoulder, left plantar and dorsal foot, right posterior wrist, right dorsal foot, right anterior knee, and toes in both feet. (R. 385). She reported her pain as tightness, stiffness, and shooting discomfort with a severity level of 6/10. *Id*. The plaintiff stated that "[e]veryday living makes her discomfort worse." *Id*. Specifically, she experiences "shooting, severe low back pain while lifting" and pain that travels down her right leg. *Id*. She also regularly experiences swelling in her right foot and knees. *Id*. The plaintiff's history included back pain since 2011, numbness in her toes since 2017, collapsed left arch, previous fractures in her right foot and right wrist, and multiple knee injuries due to falls. *Id*.

Traeger N. Tvedten, D.C. treated plaintiff with Diversified Chiropractic Manipulative Therapy ("CMT") to the right pelvis, spine, left ankle, and left shoulder. Dr. Tvedten noted that the plaintiff "was hypersensitive down [her] entire left leg" and she "could hardly stretch or loosen muscles." (R. 385). He found that the plaintiff had spinal restrictions at multiple spinal levels and in her right pelvis. *Id*. He further noted extraspinal

13

restrictions/subluxations in the plaintiff's left ankle and left shoulder, pain and tenderness in her lumbo-sacral, foot, knee, and shoulder, and a postural irregularity of high left hip. *Id*. He noted range of motion concerns in the plaintiff's cervical left lateral flexion, lumbar left lateral flexion, thoracic extension, and left ankle dorsiflexion. *Id*. Although the plaintiff experienced some improvement after treatment, she still favored the left leg and had left side pain with walking. (R. 386).

The ALJ's decision acknowledged Dr. Tvedten's report, concluding that these findings "provide support for a less than light [RFC]," (R. 25). However, the ALJ rejected the need for any additional restrictions (such as a restriction to sedentary work), finding that "[f]urther limitations are not supported . . . because there are insufficient medical records to support greater impairments and the record also noted she was improving." (R. 25).

However, "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider '(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.'" *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *see also Lee v. Barnhart*, 117 F. App'x 674, 2004 WL 2810224, at *6 (10th Cir. 2004) (unpublished). A claimant's inability to afford medical care may "provide[] an alternative explanation, other than lack of a severe impairment, for [the claimant's] failure to obtain treatment." *Lee*, 2004 WL 2810224, at *6.

Here, the hearing record established that the plaintiff does not have health insurance or access to Indian Healthcare. (R. 48). She was able to see a chiropractor only because a friend paid her bill. (R. 49). However, the ALJ did not address the relevant factors in weighing the absence of medical evidence, including whether a lack of insurance prevented the plaintiff from seeking additional treatment for her impairments.

This error warrants reversal and remand for further analysis and, at minimum, a more considered explanation of how the ALJ weighed the medical and non-medical evidence regarding the plaintiff's physical limitations.[3] As part of this analysis, the ALJ should determine whether further development of the record is appropriate. "The claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Thereafter, "the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (quoting Flaherty, 515 F.3d at 1071).

## V.  Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is not consistent with the applicable legal standards or supported by substantial evidence. Therefore, the decision of the Commissioner finding the plaintiff not disabled for the

---

[3] Because the Court finds this issue is dispositive and requires the case be remanded, the Court does not reach other issues raised in the parties' briefs, including the issue of whether the plaintiff's use of a cane is medically necessary.

relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

DATED this 29th day of September 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge